Anthony Joe LARETTE, Appellant,

v.

STATE of Missouri, Respondent.

No. 48923.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 26, 1985.

Motion for Rehearing and/or Transfer
Denied Jan. 14, 1986.

Application to Transfer Denied
March 27, 1986.

38

Dorothy Mae Hirzy, Public Defender, Beth S. Ferguson, Asst. Public Defender, St. Louis, for appellant.

John Munson Morris, Mark Anthony Richardson, Asst. Attys. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was convicted of capital murder after a jury trial and sentenced to death. His conviction was affirmed on direct appeal by the Missouri Supreme Court in *State v. LaRette*, 648 S.W.2d 96 (Mo. banc 1983), *cert. denied* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983), which contains a detailed discussion of the murder. Movant subsequently filed a pro se Rule 27.26 motion and counsel was appointed. Counsel filed an amended motion in which movant alleged that his appointed counsel at trial was ineffective for failing to investigate and present evidence concerning movant's history of mental illness. He further alleged that the jury selected at his trial was "death-qualified", and thus conviction-prone, in violation of his Sixth Amendment

right to a jury composed of a fair cross-section of the community.

On May 18, 1984, movant filed a pro se motion to remove his attorney from the 27.26 proceedings and requested the appointment of new counsel. On May 24, 1984, movant's attorney filed a motion to withdraw as counsel. Both motions were denied, and the 27.26 hearing was held as scheduled on June 1, 1984.

On appeal movant contends that the hearing court erred in concluding that movant was not denied effective assistance of counsel at trial and in concluding that movant was not denied his constitutional right to a jury composed of a fair cross-section of the community. He further asserts that the hearing court erred in denying movant's motion to remove counsel and his attorney's motion to withdraw.

Movant's principle point appears to be his assertion that he was denied effective assistance of counsel due to his attorney's "failure to investigate and present evidence of [movant's] medical history and failure to present testimony of [movant's] father, especially during the penalty phase of the trial."

The record reveals that the trial court ordered a pretrial psychiatric examination of movant at State Hospital No. 1 in Fulton, Missouri pursuant to § 552.020, RSMo 1978. The report of that examination contained the following findings:

1) That the accused has no mental disease or defect within the meaning of Section 552.010.

2) That the accused has the capacity to understand the proceedings against him and can assist in his own defense.

3) That the accused did know and appreciate the nature, quality and wrongfulness of the alleged conduct and was able to conform his conduct to the requirements of the law.

4) That the accused does not require inpatient hospitalization pending further proceedings. He is not a suicidal risk at

this time.[1] If he is convicted and has to go to the penitentiary, he states then he will try to take his life. He thinks he would die in the penitentiary anyway and has very little to live for.

Trial counsel testified at the motion hearing that he was aware of movant's history of treatment for mental illness allegedly related to a brain injury received as a child. He further said that he discussed with movant the possibility of presenting evidence of movant's mental condition at trial; however, movant told counsel that he did not want to raise a mental disease or defect defense and stated that he "would rather die than go back to a mental hospital."

Movant's defense at trial was that a hitchhiker committed the murder. Movant chose not to testify because he believed, as did counsel, that his four prior convictions, including one for rape, would be extremely damaging to his case considering the circumstances of the victim's death. Counsel also said that movant had been a "terrible" witness when he testified at the pretrial hearing on a motion to suppress. Counsel had discussions with movant's mother and father regarding movant's history of medical treatment, but movant's father was not called to testify at trial. Counsel said that he was instructed by movant not to have movant's father testify because movant was concerned about his father's health. Movant's father had a serious heart condition which had required frequent hospitalization, and movant believed that travel and the tensions of the trial would be harmful to his father. Counsel also testified that he believed movant's father had nothing substantial to offer the defense and the motion hearing record reveals that movant's father was in custody at the time of trial, charged with attempting to help movant escape.

After movant was found guilty of capital murder counsel explained the sentencing phase of the trial and told movant this was his opportunity to testify regarding his "childhood incident" and his marital discord. Movant said he would not take the stand and "simply hung his head and sat there through the entire proceedings." Thus the only evidence regarding mitigating circumstances presented during the sentencing phase was a stipulation as to the expected testimony of movant's mother, which contained information regarding movant's mental state and marital problems shortly before the murder and upon returning home several days after the crime.

Counsel testified that at all times during his representation of movant he believed him to be "lucid" and capable of making decisions; further, counsel noted no evidence of mental defect or disease.

■ The hearing court found that counsel did not call movant's father as a witness because he was specifically directed not to do so by movant. The court further found that counsel followed movant's instruction to offer no evidence of mental illness during the trial and "that movant, when given the opportunity to testify at the punishment phase, refused to testify." The court then concluded that movant received "competent and adequate representation in the presentation of his defense." We agree. Movant did not demonstrate that counsel "fail[ed] to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was prejudiced thereby." *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Counsel clearly did not breach this reasonableness standard by acceding to his client's desires during the guilt phase of the trial.

■ In regard to counsel's actions in connection with the punishment phase, we note that there were at least three potential sources of proof of movant's mental and emotional problems: movant's testimony; his parent's testimony; and his medical records. Counsel was not required to utilize any particular one of these sources or pursue them all. The decision not to have movant's father testify had a reasonable basis, which we have already discussed. A

---

**1.** Movant had attempted to commit suicide immediately prior to his arrest.

stipulation concerning movant's mother's expected testimony, which contained information about movant's emotional state and marital problems prior to the crime, was read to the jury. Counsel was also prepared to have movant testify, and spent the entire recess prior to the punishment phase attempting to convince him to do so; however, movant refused to take the stand. Thus, this was not a situation where counsel neglected to prepare any evidence regarding mitigating factors; that more evidence was not introduced was a consequence of movant's recalcitrance. We conclude that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 694 (1984).

■ Further, movant failed to demonstrate that prejudice resulted from the alleged errors of trial counsel. The United States Supreme Court noted in *Strickland,* 104 S.Ct. at 2069, that "[w]hen a defendant challenges a death sentence ... the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." We believe that the aggravating circumstances here were overwhelming:

> ... the evidence surrounding the brutal, heinous, and senseless slaying of the 18-year-old victim in this case fully warranted the jury to find *both* aggravating circumstances.... [torture and depravity of mind].

> Her body bore mute and stark evidence of the serious physical abuse and pain and suffering she endured in her futile struggle for life. The photographic exhibits, as well as the medical testimony, demonstrate the bruising of her head and arm, the cuts or defense wounds to her hands and fingers, the stab wounds to her chest and the near decapitation by reason of her throat having been cut from ear to ear. These matters and the physical evidence in the apartment suggest she was pursued

from one end of the apartment to the other as defendant struck, stabbed, and slashed her.

*State v. LaRette,* 648 S.W.2d at 101–102. In light of these circumstances no prejudice could have resulted from the alleged errors of trial counsel.

■ Movant next contends that he was denied his Sixth Amendment right to a jury composed of a fair cross-section of the community because the jury was "death-qualified." Two jurors were excluded from the jury panel after each stated that she would not consider imposing the death penalty if chosen as a juror. Trial counsel included in the motion for new trial, as an assignment of error, the trial court's denial of defendant's motion challenging the death penalty questions asked on voir dire; however, this issue was not pursued on direct appeal.

Movant's position on this issue has been repeatedly rejected by the Missouri Supreme Court. *See, State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied* — U.S. —, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985); *State v. Johns,* 679 S.W.2d 253, 265 (Mo. banc 1984), *cert. denied* — U.S. —, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *State v. Byrd,* 676 S.W.2d 494, 499 (Mo. banc 1984), *cert. denied* — U.S. —, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *State v. Preston,* 673 S.W.2d 1, 8–9 (Mo. banc 1984), *cert. denied* — U.S. —, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). Furthermore, the United States Supreme Court in *Wainwright v. Witt,* — U.S. —, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–852 (1985), held that a juror may be excluded for cause because of his or her views on capital punishment when those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." We recognize that our decision is contrary to *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985), *cert. granted sub nom. Lockhart v. McCree,* — U.S. —, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985); however, we are bound not by that Eighth Circuit case but by the previously cited Missouri and United States Supreme

Court decisions. Movant's contention is without merit.

We find no abuse of discretion in the court's rulings on movant's motion to remove counsel and counsel's motion to withdraw, thus movant's final assignment of error is also without merit.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.