**Anthony J. LaRETTE, Plaintiff–Appellant,**

v.

**Paul DELO, Defendant–Appellee.**

**No. 94–1901.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Jan. 11, 1995.

Suggestion for Rehearing En Banc Denied March 27, 1995.

---

Lee Lawless, St. Louis, MO, argued, for appellant.

Stephen David Hawke, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Anthony J. LaRette, a Missouri inmate under sentence of death, appeals the district court judgment [1] denying his fourth amended petition for a writ of habeas corpus. We affirm.

## I. Factual and Procedural Background

At 11:00 a.m. on July 25, 1980, eighteen-year-old Mary Fleming, bleeding profusely, ran across a street in St. Charles, Missouri, and collapsed on the doorstep of a neighbor who immediately called the police. Fleming was naked except for a pulled-up bikini top. She had been stabbed several times in the chest, and her neck was slashed from ear to ear. Her forehead and right arm were bruised, and her fingers and hands had numerous cuts, suggesting a struggle. Despite efforts by emergency medical personnel, Fleming bled to death. Police found blood scattered throughout her apartment, the obvious scene of the crime.

As Fleming ran out the back door of her apartment, a witness saw a man run out the front door of the apartment to a cream-colored convertible and drive away. Police traced the car to Richard Roberson, who told them that LaRette had borrowed the car that day for a job interview. Two days after the murder, LaRette left St. Charles for his home in Kansas. He later admitted killing Fleming in telephone conversations with Roberson, who allowed a police officer to listen in on one of these conversations.

St. Charles police initially interviewed LaRette at a jail in Shawnee County, Kansas. LaRette stated that a hitchhiker was responsible for the murder. The next day, police transported him to St. Charles, where he was again interviewed and admitted killing Fleming. Prior to both interviews, LaRette signed a written waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

LaRette was convicted of capital murder and sentenced to death. The Missouri Supreme Court affirmed on direct appeal. *State v. LaRette*, 648 S.W.2d 96 (Mo. banc), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). LaRette then filed a motion for post-conviction relief under Mo. R.Crim.P. 27.26, arguing primarily that his trial counsel provided ineffective assistance for failing to investigate and present evidence concerning LaRette's history of mental illness at the guilt and sentencing phases of his trial. Following an evidentiary hearing, the motion was denied, and the Missouri Court of Appeals affirmed. The state courts found that counsel was aware of LaRette's history of mental illness, but LaRette instructed counsel not to raise a mental illness defense during the guilt phase. At the sentencing phase, LaRette refused to testify, so counsel presented mitigating testimony as to his emotional state prior to the crime through a stipulation reciting his mother's expected testimony. *See LaRette v. State*, 703 S.W.2d 37 (Mo.Ct.App.1985).

LaRette then commenced this federal habeas corpus proceeding. The case was stayed twice in the district court to permit LaRette to exhaust additional state court remedies. First, he filed a successive Rule 27.26 motion, which was denied primarily for that reason. *See LaRette v. State*, 757 S.W.2d 650 (Mo.Ct.App.1988). During the second stay, he filed motions to recall the mandate and for state habeas relief which the Supreme Court of Missouri summarily denied. LaRette then filed a fourth amended petition with the district court, alleging over fifty grounds for habeas relief. He submitted medical records from 1959 to 1978, which his trial counsel had not obtained, and a January 1989 psychiatric evaluation report by Dr. A.E. Daniel which opined (i) that, at the time of the murder, LaRette "was suffering from a mental disease in the form of organic mental disorder due to Partial Complex Seizures, also known as psychomotor seizures or Temporal Lobe Epilepsy," and (ii) that this disease provided "a definite case

---

1. The HONORABLE EDWARD L. FILIPPINE, Chief Judge of the United States District Court for the Eastern District of Missouri.

for diminished capacity" and was "a strong mitigating factor [that] should have been introduced at the penalty phase."

In a series of exhaustive memorandum opinions, the magistrate judge[2] considered this additional medical evidence and recommended that habeas relief be denied without an evidentiary hearing, and the district court accepted that recommendation and denied the petition for a writ of habeas corpus. This appeal followed.

## II. Ineffective Assistance of Counsel— Failure To Investigate and Present Evidence of Mental Illness

LaRette's primary argument on appeal is that his trial counsel was ineffective in failing to adequately investigate his mental condition and in not introducing evidence of that condition at either the guilt or sentencing phase of the trial. LaRette argues that further investigation would have uncovered "a plethora of records from hospitals and doctors" revealing a twenty-year history of temporal lobe epilepsy, head injuries, brain damage, and seizures. Larette contends that this evidence would have provided both a defense at the guilt phase and a mitigating circumstance at the penalty phase by establishing that the murder was "precipitated by [LaRette's] mental illness which causes intermittent rage behavior which he cannot control."

This claim was the subject of a post-conviction evidentiary hearing in state court. LaRette's trial counsel testified that he requested a psychiatric evaluation the day after he was appointed to represent LaRette. Dr. Henry Bratkowski examined LaRette and reported that he was of average intelligence, was competent to stand trial, and did not suffer from any mental disorder that would excuse him from criminal responsibility. Counsel further testified that he discussed the possibility of presenting a mental illness defense with his client. LaRette told counsel that he (LaRette) had no mental problems at the time of the murder and instructed counsel not to present a mental illness defense

because LaRette "would rather die than go back to a mental hospital." At all their pretrial meetings, counsel considered LaRette to be lucid and in control of his faculties.

At the guilt phase of the trial, LaRette instructed counsel to present the defense that LaRette was innocent because a hitchhiker had murdered Mary Fleming. After the jury found LaRette guilty of the crime, counsel spent the entire recess before the sentencing phase urging LaRette to testify about mitigating circumstances, including his history of mental illness beginning with a childhood head injury, and his marital problems immediately prior to the murder. LaRette refused to testify. During the sentencing phase, counsel introduced testimony by LaRette's mother as to his emotional state and marital problems at the time of the murder.

■■ LaRette first argues that counsel ineffectively investigated LaRette's mental condition. Though counsel obtained a psychiatric evaluation which did not support a competency defense, LaRette contends that this evaluation was flawed because the examiner did not have LaRette's prior medical records. Therefore, counsel should have obtained those records and requested a second evaluation. However, as the state courts noted, this failure to investigate claim must be considered in light of what LaRette told his counsel—that he was competent at the time of the murder and that counsel should not pursue a competency defense.

> In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.... [W]hen a defendant has given counsel rea-

2. The HONORABLE DAVID D. NOCE, United States Magistrate Judge for the Eastern District of Missouri.

son to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *see also Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Laws v. Armontrout,* 863 F.2d 1377, 1383–84 (8th Cir. 1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). Taking this factor into account, we agree with the Missouri courts and the district court that counsel's investigation did not fall "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064.

■ LaRette also argues that counsel was ineffective in not presenting evidence of mental illness at the guilt and sentencing phases of the trial. The state courts concluded that counsel did not provide constitutionally ineffective assistance (i) because counsel followed LaRette's instruction in not presenting such evidence during the guilt phase, and (ii) because LaRette's refusal to testify frustrated counsel's attempt to address this issue during the sentencing phase. *LaRette,* 703 S.W.2d at 39–40. Like the district court, we agree. *Compare Singleton v. Lockhart,* 962 F.2d 1315, 1321–22 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 435, 121 L.Ed.2d 355 (1992).

### III. The Aggravating Circumstance Instruction

Following the jury's guilty verdict, the trial court conducted the penalty phase of LaRette's trial. Under the statute then in effect, Mo.Rev.Stat. § 565.012 (Supp.1980),[3] if the jury found at least one statutory aggravating circumstance beyond a reasonable doubt, it must then consider whether the death penalty should be imposed, taking into account all evidence in aggravation and mitigation of punishment presented during the guilt and penalty phases of the trial, and it must set out in writing the statutory aggravating circumstance(s) found if it returned a verdict of death. *See generally State v. Shaw,* 636

S.W.2d 667, 675 (Mo. banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Bolder,* 635 S.W.2d 673, 683 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983).

The trial court submitted to LaRette's jury one statutory aggravating circumstance based on Mo.Rev.Stat. § 565.012.2(7):

> [Y]ou must first unanimously determine whether the murder of Mary Fleming involved torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible or inhuman.
>
> * * * * * *
>
> [I]f you do not unanimously find from the evidence beyond a reasonable doubt that the foregoing circumstance exists and that it is an aggravating circumstance, you must return a verdict fixing the punishment of the defendant at imprisonment for life. . . .

The jury returned a verdict fixing the punishment at death. The verdict form recites that it found beyond a reasonable doubt both the statutory aggravating circumstance, "Torture, Depravity of mind and that as a result it was outrageous and wantonly vile, horrible and inhuman," and a non-statutory aggravating circumstance, LaRette's 1974 rape conviction in Douglas County, Kansas.

■ LaRette argues that this instruction is unconstitutionally vague because the term "depravity of mind" does not provide clear and objective standards that adequately channel the sentencer's discretion in a way that can be rationally reviewed, citing *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). We rejected this precise argument in *Battle v. Delo,* 19 F.3d 1547, 1562 (8th Cir.1994), another case in which the jury expressly found that the crime involved torture as well as depravity of mind. A finding of torture is sufficient to properly narrow the class of persons eligible for the death penalty. *See Maynard,* 486 U.S. at 364–65, 108 S.Ct. at 1859–60; *Smith v. Armontrout,* 888 F.2d 530, 538 (8th Cir.1989).

---

**3.** All citations will be to the statutes in effect when LaRette was tried in 1981. These statutes

were later repealed, and new, recodified sections went into effect in 1984.

Moreover, as required by Mo.Rev.Stat. § 565.014, the Missouri Supreme Court reviewed the evidence and specifically found that it supports the jury's finding of torture. *LaRette,* 648 S.W.2d at 102. In a non-weighing state like Missouri, this review cured any error in the depravity-of-mind instruction. *See Mathenia v. Delo,* 975 F.2d 444, 448–50 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1609, 123 L.Ed.2d 170 (1993).[4]

## IV. Procedurally Barred Claims

■ LaRette raises numerous claims that were not presented to the state courts on direct appeal or in the post-conviction Rule 27.26 proceedings. These claims are procedurally defaulted under Missouri law. *See Kennedy v. Delo,* 959 F.2d 112, 115–16 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 168, 121 L.Ed.2d 116 (1992) (claims first raised in motion to recall the mandate); *Byrd v. Delo,* 942 F.2d 1226, 1231–32 (8th Cir.1991) (claims first raised in state habeas petition). Federal habeas relief is therefore procedurally barred unless LaRette can show cause and prejudice, or actual innocence, excusing his procedural defaults. *See Sawyer v. Whitley,* —— U.S. ——, ——–——, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992).

■ LaRette first argues that the district court erred in concluding that his sentencing claims are procedurally barred because the governing Missouri statute required the Missouri Supreme Court to independently review all errors in sentencing. *See* Mo.Rev. Stat. § 565.014.3. This contention is foreclosed by our recent decision in *Nave v. Delo,* 22 F.3d 802, 816 (8th Cir.1994) (under Missouri law, "[i]ssues falling outside the limited bases of mandatory review cannot be deemed to have been submitted to the state court").

LaRette next argues that he should not be procedurally barred because Missouri made its post-conviction procedures more restrictive after the time of his procedural defaults.

This claim is, at the least, factually unsound. On January 1, 1988, Missouri Rule 27.26 was replaced with Rule 29.15, which expressly limits an inmate to one post-conviction motion. However, in 1987, before that change took effect, LaRette's second Rule 27.26 motion was denied because he failed to present any grounds that could not have been presented in his first Rule 27.26 motion. In other words, LaRette's procedural defaults occurred before the adoption of Rule 29.15, the change in Missouri procedure to which he now objects.

■ LaRette next contends that he has demonstrated cause excusing his procedural defaults in state court. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991), quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). LaRette first argues that his procedural defaults should be excused because the State impeded his ability to present post-conviction claims by rapidly resetting his execution date as the post-conviction proceedings progressed, requiring him to devote resources to obtaining stays of execution. However, this contention is unavailing because there is no showing that LaRette was *prevented* from raising any post-conviction claim, as *McCleskey v. Zant,* 499 U.S. 467, 497–98, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991), requires.

■■ LaRette next argues that the ineffective assistance of his trial and appellate counsel should excuse his procedural defaults. However, those claims are defaulted because he failed to present them to the state courts in his initial Rule 27.26 motion. His further contention that the ineffective

---

**4.** LaRette argues that Missouri is a weighing State, and therefore the Supreme Court of Missouri did not cure the defect in the depravity-of-mind instruction because it failed to reweigh the applicable aggravating and mitigating circumstances. *See Clemons v. Mississippi,* 494 U.S. 738, 751, 110 S.Ct. 1441, 1449–50, 108 L.Ed.2d 725 (1990). LaRette's contention that Missouri

is a weighing State is based upon his comparison of § 565.012 with state statutes from other Supreme Court capital punishment cases. However, as our decisions in *Battle* and *Mathenia* have recognized, the Supreme Court of Missouri has definitively construed § 565.012 as a non-weighing statute in cases such as *State v. Shaw* and *State v. Bolder, supra.*

assistance of his state post-conviction counsel is cause excusing procedural defaults is foreclosed by our recent decision in *Foster v. Delo,* 39 F.3d 873, 877 (8th Cir.1994) (en banc). Finally, LaRette argues that Missouri's failure to fund its public defender system is cause because it prevented counsel from investigating and presenting evidence of LaRette's mental illness. As there was no ineffective assistance of counsel regarding LaRette's alleged mental illness, this is not a factor that is "external to the defense." *See Bolder v. Armontrout,* 983 F.2d 98, 99 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993).

 Alternatively, LaRette argues that his procedural defaults must be excused under the "actual innocence" exception to procedural bar because the new evidence of his mental illness demonstrates that he is actually innocent of capital murder. This contention is fatally flawed in a number of respects. First, as the district court noted, it was not timely raised in this federal habeas proceeding. Second, the actual innocence exception applies "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649. As we have explained, LaRette's claim of actual innocence is based upon new evidence of mental illness that is not the result of constitutional error at his trial. Third, LaRette's claim of actual innocence is unpersuasive on the merits. The alleged new evidence consists of LaRette's medical records and Dr. Daniel's 1989 evaluation report. In light of the pretrial psychiatric evaluation and LaRette's insistence that he was competent at the time of the murder, we cannot conclude that no reasonable juror would have found him guilty of the crime or eligible for the death penalty if this additional evidence had been introduced at either phase of the trial. *See Sawyer v. Whitley,* —— U.S. at ——–——, 112 S.Ct. at 2523–25;[5] *Murray v. Delo,* 34

F.3d 1367, 1380–81 (8th Cir.1994); *Shaw v. Delo,* 971 F.2d 181, 187 (8th Cir.1992).

For the foregoing reasons, we agree with the district court that LaRette is procedurally barred from obtaining federal habeas relief on the claims that he procedurally defaulted in state court.

## V. Proportionality Review of Sentence

 LaRette argues that the Missouri Supreme Court violated his Eighth Amendment and Fourteenth Amendment rights by the manner in which it reviewed the proportionality of his sentence under Mo.Rev.Stat. § 565.014.3. This contention is foreclosed by our recent decisions in *Foster,* 39 F.3d at 882, and *Murray v. Delo,* 34 F.3d at 1376–77. The statute gave LaRette notice that the proportionality of his sentence would be reviewed on direct appeal. *See* Mo.Rev.Stat. § 565.014.3(3). The Missouri Supreme Court then performed that review and concluded that the penalty was not "disproportionate to the penalty imposed in similar cases." *LaRette,* 648 S.W.2d at 105. "The Constitution does not require us to look behind that conclusion." *Walton v. Arizona,* 497 U.S. 639, 656, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990).

## VI. Admission of Incriminating Statements

 LaRette argues that his incriminating statements to police were improperly admitted at trial because they were involuntary and because his mental condition prevented him from knowingly and intelligently waiving his *Miranda* rights. After painstaking review of the trial record, the Supreme Court of Missouri rejected LaRette's claim of involuntariness. *See LaRette,* 648 S.W.2d at 104–05. Like the district court, we reject this claim. A defendant's mental condition alone is not enough to render a confession

---

5. This court has held that *Sawyer's* actual innocence standard applies to guilt as well as penalty phase issues. *See Cornell v. Nix,* 976 F.2d 376, 381 (8th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1820, 123 L.Ed.2d 450 (1993). Because the Supreme Court may address this question in *Schlup v. Delo,* 11 F.3d 738, 740 (8th Cir.1993), *cert. granted,* —— U.S.

——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994), we have also considered LaRette's guilt-phase claim under the somewhat different standard of *Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986), and conclude that LaRette has failed to satisfy that standard as well.

constitutionally involuntary; there must be coercive police activity which LaRette fails to allege. *See Colorado v. Connelly,* 479 U.S. 157, 166–67, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986); *Jenner v. Smith,* 982 F.2d 329, 333 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993). LaRette's additional claim that his *Miranda* rights were not knowingly and intelligently waived—based again on his new evidence of mental illness—was not presented to the state courts and in any event flies in the face of LaRette's pretrial psychiatric evaluation and the other evidence of his condition when he was questioned.

## VII. Exclusion of a Prospective Juror

█ LaRette argues that a prospective juror was improperly excluded because she stated that she would vote against the death penalty unless the victim "was extremely close to [her]." The state courts rejected this claim, finding that this juror's views on capital punishment would "prevent or substantially impair" the performance of her duties as a juror, the proper Sixth Amendment standard under *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). *See LaRette,* 703 S.W.2d at 40. Giving this finding the presumption of correctness to which it is entitled under 28 U.S.C. § 2254(d) and *Wainwright,* 469 U.S. at 429, 105 S.Ct. at 854–55, the district court's determination of no constitutional error must be affirmed.

## VIII. Testimony of Witness Who Underwent Hypnosis

█ Rochelle Hord identified LaRette at trial as the man she saw run from Fleming's apartment to Roberson's car on the morning of the murder. Prior to trial, shortly after she initially described the man to police, Hord underwent hypnosis in an attempt to enhance her memory. LaRette argues that his trial counsel was ineffective for not objecting to Hord's in-court identification as hypnotically-induced, for not cross examining Hord on discrepancies in her initial description to police, and for not offering expert rebuttal testimony as to the suggestive nature of hypnosis.

Counsel's pre-trial motion to suppress this evidence was denied. This ruling was consistent with Missouri law at that time. *See State v. Little,* 674 S.W.2d 541, 543–44 (Mo. banc 1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985), and *State v. Greer,* 609 S.W.2d 423, 431–36 (Mo.Ct.App. 1980), *vacated on other grounds sub nom., Missouri v. Brown,* 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981). The issue was not raised on direct appeal, but this possible procedural default was excused when the Missouri courts considered it on the merits in LaRette's post-conviction proceedings.

At the Rule 27.26 evidentiary hearing, LaRette's counsel explained that he did not pursue the hypnosis issue at trial because Ms. Hord had initially given a detailed description of LaRette that was the same as her description after hypnosis and therefore her in-court identification was not affected by hypnosis. The state court rejected the claim on the ground that "no new evidence was acquired as a result of" the hypnosis. The record does not reflect that this ruling was appealed, so the issue is probably procedurally barred. In any event, although the Supreme Court of Missouri subsequently held hypnotically-induced testimony inadmissible, *see Alsbach v. Bader,* 700 S.W.2d 823 (Mo. banc 1985), the Rule 27.26 court's finding that Hord's testimony was not hypnotically induced demonstrates that LaRette's counsel did not provide ineffective assistance in dealing with this state law evidentiary issue at trial.

## IX. Conclusion

We have carefully considered LaRette's many other claims of constitutional error and conclude they are without merit. In addition, we agree with the district court that LaRette did not establish the right to an evidentiary hearing on questions of procedural bar or the merits of his habeas claims. *See generally Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992); *Bannister v. Armontrout,* 4 F.3d 1434, 1442 (8th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994); *McCann v. Armontrout,* 973 F.2d 655, 658–59 (8th Cir.1992), *cert.*

*denied,* —— U.S. ——, 113 S.Ct. 1342, 122 L.Ed.2d 724 (1993). The judgment of the district court is affirmed. LaRette's motion for leave to file a post-argument brief is granted.