Kenneth G. CHARRON, Sr.,
Petitioner–Appellant,

v.

James Anthony GAMMON; State of Missouri, Respondents–Appellees.

Kenneth G. CHARRON, Sr.,
Petitioner–Appellant,

v.

James Anthony (Tony) GAMMON, Superintendent; Jeremiah (Jay) W. Nixon, Attorney General, Respondents–Appellees.

Nos. 94–3661, 95–1220.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1995.

Decided Oct. 25, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied in No. 94–3661 Dec. 20, 1995.

---

854

Warren Hoff, Jr., Clayton, Missouri, and Carol L. Moran, St. Louis, Missouri, for appellant.

John William Simon, Asst. Atty. Gen., Jefferson City, Missouri, for appellees.

Before WOLLMAN and HANSEN, Circuit Judges, and MAGNUSON,* District Judge.

HANSEN, Circuit Judge.

This matter involves the consolidation of two appeals. In the first appeal (95–1220), Kenneth G. Charron challenges the district court's[1] denial of his 28 U.S.C. § 2254 habeas corpus petition on the basis that his claims were procedurally defaulted. In the second appeal (94–3661), Charron challenges the district court's[2] denial of his subsequent 28 U.S.C. § 2254 habeas petition on the basis that it constituted an abuse of the writ. We affirm.

I.

On January 24, 1986, a jury in the City of St. Louis, Missouri, found Charron guilty of forcible rape, burglary in the first degree,

and two counts of robbery in the second degree. On direct appeal to the Missouri Court of Appeals, Charron raised three points: First, the trial court did not have jurisdiction to convict him of forcible rape because the indictment only charged him with non-forcible rape. Second, his sentences of life imprisonment on the two robbery counts were in excess of the statutory limit. Third, the trial court erred by permitting his alleged accomplice to appear in court dressed in prison clothing. *State v. Charron*, 743 S.W.2d 436 (Mo.Ct.App.1987). Charron also filed a motion for an extension of time to file a supplemental brief to raise 12 additional issues; however, the court denied this motion. The court ultimately affirmed the convictions but reversed and remanded with respect to the sentencing issue. *Id.* at 438.

Charron later filed a motion for postconviction relief pursuant to Mo.Ct.R. 27.26,[3] and subsequently filed two amended motions. In his Rule 27.26 motion, Charron claimed that his trial counsel was ineffective on six bases. The trial court denied Charron relief. On appeal Charron raised two points, first that his trial counsel disclosed client confidences at the Rule 27.26 hearing, and second, that his postconviction counsel at the motion court level was ineffective. The Missouri Court of Appeals rejected both of these arguments in an unpublished opinion. *Charron v. State*, No. 56149, slip op. at 3 (Mo.Ct.App. June 26, 1990) (per curiam). Charron then filed state habeas corpus petitions in the circuit court of Cole County, in the Missouri Court of Appeals, and in the Supreme Court of Missouri. All three petitions were summarily denied.

Charron then filed a federal petition for a writ of habeas corpus raising twelve grounds

---

* The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

2. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri, adopting the report and recommenda-

tion of the Honorable Catherine D. Perry, then United States Magistrate Judge for the Eastern District of Missouri, now United States District Judge for the Eastern District of Missouri.

3. Effective January 1, 1988, the Supreme Court of Missouri adopted Rule 29.15, which, together with Rule 24.035, repealed and replaced Rule 27.26. Rule 29.15 creates the postconviction relief procedure for felons convicted after a trial. Rule 24.035 is the parallel procedure available to felons convicted after a guilty plea.

for relief.[4] The magistrate judge to whom the case was referred issued a report and recommendation, ruling that each of Charron's claims was procedurally defaulted because the claims had not been presented to the Missouri courts either on direct appeal or in Charron's state postconviction petition. The magistrate judge determined that Charron failed to show cause and prejudice or actual innocence sufficient to overcome the procedural default and, therefore, recommended that Charron's habeas petition be dismissed with prejudice. The district court adopted the magistrate judge's report and recommendation. Charron appeals from this ruling.

Charron later filed a second federal habeas petition attacking the same convictions and sentences outlined above. Charron claimed only one ground for habeas relief in the second petition: that his due process and equal protection rights were being violated because the State of Missouri will not permit him to conduct DNA tests on certain evidence offered by the prosecution at trial. Charron argued that these tests would "prove conclusively petitioner's innocence." (No. 94–3661, R. at 7.) The magistrate judge to whom the case had been referred issued a report and recommendation recommending dismissal of this petition because it constituted an abuse of the writ and Charron failed to establish cause and prejudice or actual innocence sufficient to overcome this procedural obstacle. In the alternative, the magistrate judge concluded that Charron has no consti-

4. We quote the magistrate judge's summary of Charron's claims:

(1) Petitioner argues that he has been denied access to the state courts to fully litigate his claims of illegal and unconstitutional confinement;

(2) Petitioner argues that the trial court lacked jurisdiction to proceed against him on an information in lieu of an indictment because the indictment was never quashed and the subsequent information changed the prosecution's theory and the charges against the petitioner;

(3) Petitioner argues that he was denied various Fourteenth and Sixth Amendment rights, including the right to a fair trial, when the prosecution was allowed to present evidence that petitioner's co-defendant was actually guilty of the offense charged and the co-defendant was not present for the trial;

(4) Petitioner argues that he was denied a fair trial when the prosecution called petitioner's co-defendant as a witness even though the prosecution knew that the co-defendant would invoke his Fifth Amendment rights and cause the jury to infer petitioner's guilt;

(5) Petitioner argues:

(a) that the evidence was insufficient to convict him of second degree robbery against victim Winston because it did not show that he had prior knowledge of, agreement with, or intentionally aided in the design of his co-defendant to rob the victim, and

(b) that the verdict directing instruction on the second degree robbery count was improper because:

(i) it did not require the jury to find specific conduct on the part of the petitioner that constituted "aiding," and

(ii) it asked the jury to find that stolen money was in the possession of the victim, when it was really taken from her purse rather than from her immediate person;

(6) Petitioner argues that his due process and equal protection rights were violated because the verdict directing instruction on the first degree burglary charge did not require the jury to find that petitioner committed the burglary with the intent and purpose of committing rape and robbery, as charged in the original indictment;

(7) Petitioner argues:

(a) that the evidence was insufficient to convict him of second degree robbery against victim Glasscock because it did not show that he had prior knowledge of, agreement with, or intentionally aided in the design of his co-defendant to rob the victim, and

(b) that the verdict directing instruction on Count II (second degree robbery committed against victim Glasscock) was improper because it did not require the jury to find specific conduct on the part of the petitioner that constituted "aiding";

(8) Petitioner argues that the trial court erred in allowing petitioner to be convicted of rape, burglary and two counts of robbery because § 556.041 R.S.Mo. provides limitations on convictions for multiple offenses and multiple punishments for lesser included offenses;

(9) Petitioner argues that the trial court imposed excessive sentences in violation of his Fifth, Eighth and Fourteenth Amendment rights;

(10) Petitioner argues that his convictions for rape, second degree robbery, and first degree burglary violate the double jeopardy clause;

(11) Petitioner argues that his rights to equal protection and due process were violated when the trial court failed to give an instruction defining "stealing" as used in its verdict directing instruction on the burglary count; and

(12) Petitioner argues that the trial court erred in overruling his motion for judgment of acquittal at the close of the prosecution's case in that the evidence was insufficient to convict petitioner of forcible rape.

(Appellant's Addend. at A–8—A–10)

tutional right to DNA testing and denied Charron's claims on the merits. The district court adopted both conclusions. Charron appeals from this ruling as well.

## II.

### A. Charron's First Habeas Petition

In his appeal from the district court's dismissal of his first habeas petition, Charron claims that the district court erred on three bases: (1) applying *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), retroactively in this case; (2) failing to properly evaluate the effect of the Supreme Court of Missouri's summary order denying his state habeas petition; and (3) concluding that Charron had not established cause and prejudice sufficient to overcome any procedural default. We address these arguments in turn.

Charron argues that the magistrate judge erred in concluding that *Coleman* governed the procedural default analysis. The magistrate judge initially concluded that under *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), Charron's claims were not procedurally defaulted. However, after the parties submitted additional documents, including the complete legal files from Charron's trial and postconviction proceedings, the magistrate judge concluded that Charron's claims were in fact procedurally defaulted based on *Coleman*. Charron contends that *Coleman* constituted a "new rule" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and should not have been applied to his case because *Coleman* was decided after his conviction became final. Instead, Charron contends, the magistrate judge correctly concluded in the first instance that *Harris* controls the procedural default analysis.

■■■ We reject Charron's claim that *Coleman* constituted a "new rule" under *Teague* and accordingly agree with the magistrate judge that *Coleman* governs the outcome of the procedural default issue. In *Teague*, the Supreme Court held that a "new rule" which arises after a habeas petitioner's conviction becomes final may not be applied retroactively on collateral review to invali-

date a state court conviction unless the rule falls within two narrowly circumscribed exceptions not relevant here. 489 U.S. at 301, 109 S.Ct. at 1070. In determining whether a principle sets forth a "new rule" under *Teague*, "the court must '[s]urve[y] the legal landscape as it then existed,' ... and 'determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.'" *Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (internal citation omitted) (alterations in original).

It is thus clear from the language of *Teague* and its progeny that its "new rule" principle applies to rules of *constitutional* law which the states are required to observe. *Coleman*, however, did not set forth any new constitutional principle but merely discussed the analysis to be used in determining whether claims have been procedurally defaulted pursuant to an independent and adequate state rule, as well as the standard required to overcome that default. Further, the language from *Teague* and *Caspari* indicates that the "new rule" principle applies to claims made by the habeas petitioner, not procedural defenses asserted by the state. Other courts have held that the procedural default rule from *Coleman* and the related doctrine of abuse of the writ outlined in *McCleskey v. Zant*, 499 U.S. 467, 477–97, 111 S.Ct. 1454, 1461–72, 113 L.Ed.2d 517 (1991), do not constitute "new rules" under *Teague* and therefore may be applied retroactively. *See Hull v. Freeman*, 991 F.2d 86, 90 (3d Cir.1993) (*Coleman* does not set forth "new rule" and may be applied retroactively); *Andiarena v. United States*, 967 F.2d 715, 717–18 (1st Cir.1992) (abuse of the writ doctrine not "new rule" and may be applied retroactively); *Hudson v. Whitley*, 979 F.2d 1058, 1062–63 (5th Cir.1992) (same). Thus, the magistrate judge properly applied *Coleman* in analyzing whether Charron's claims were procedurally defaulted.

Charron next argues that the magistrate judge erred by failing to evaluate the effect of the Supreme Court of Missouri's order

denying his state habeas petition before the magistrate judge concluded that Charron's claims were procedurally defaulted. Charron contends that the court should have conducted an inquiry to determine whether the Supreme Court of Missouri's denial of his state habeas petition was in fact on procedural, rather than substantive, grounds.

Although Charron cites *Byrd v. Delo*, 942 F.2d 1226 (8th Cir.1991), as favorable authority, *Byrd* actually supports a finding that the magistrate judge did not need to conduct any extensive inquiry into the meaning of the summary denial of Charron's state habeas petition. In *Byrd*, the Supreme Court of Missouri summarily denied Byrd's state habeas petition, stating "Now at this day, on consideration of the petition for writ of habeas corpus herein to the said respondent, it is ordered by the court here that the said petition be, and the same is hereby denied." *Id.* at 1229. Byrd argued that this ruling by the Supreme Court of Missouri was sufficient under *Harris*[5] to lift a state procedural bar and permit a federal court to review the merits of his habeas claims. *Byrd*, 942 F.2d at 1231. However, we rejected this argument in light of the following language from *Coleman:*

> In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*Id.* (quoting *Coleman*, 501 U.S. at 735, 111 S.Ct. at 2557). We held that the summary dismissal of Byrd's state habeas petition, which was silent as to its underlying grounds, did not " 'fairly appear [ ] to rest primarily on federal law, or to be interwoven with the federal law.' " *Id.* (quoting *Coleman*, 501 U.S. at 735, 111 S.Ct. at 2557). Accordingly, we concluded that the dismissal of Byrd's petition had to have been based on Missouri's

procedural rule that state habeas petitions "cannot be used as a vehicle for raising questions that could have been raised on direct appeal or in a Rule 27.26 proceeding, filed initially in a state trial court." *Id.* at 1232. *See also Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir.1994) (applying *Coleman* and rejecting claim that unexplained summary denial of motion to recall mandate opens up the merits on defaulted claims), *cert. denied,* —— U.S. ——, 115 S.Ct. 462, 130 L.Ed.2d 370 (1995); *Battle v. Delo*, 19 F.3d 1547, 1561 (8th Cir. 1994) (procedural bar cannot be overcome by filing state habeas petition), *op'n amended and adhered to on remand,* 64 F.3d 347 (8th Cir.1995).

■ In this case, the Supreme Court of Missouri denied Charron's state habeas petition with language identical to that used to deny Byrd's state habeas petition. Charron's attempts to distinguish *Byrd* are unpersuasive. Thus, the magistrate judge committed no error in his evaluation of the Supreme Court of Missouri's denial of Charron's state habeas petition in analyzing the procedural default issues.

Charron finally argues that, assuming that his federal habeas claims have been procedurally defaulted, the magistrate judge erred in concluding that he had not provided cause and prejudice sufficient to overcome the default. He claims "cause" on two grounds: (1) ineffectiveness of his direct appeal counsel; and (2) the Missouri Court of Appeals' refusal to grant his motion for extension of time to file a supplemental brief. He claims that he was prejudiced because his constitutional claims have now been dismissed without being addressed on their merits.

■ In order for a habeas petitioner to receive federal review of habeas claims that have been procedurally defaulted in state court, the petitioner must demonstrate cause for the default and actual prejudice. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.[6]

---

5. In *Harris,* the Supreme Court stated that "[A] procedural default does not bar consideration of a federal habeas claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural

bar." 489 U.S. at 263, 109 S.Ct. at 1043 (internal quotations omitted).

6. Charron makes no claim of "actual innocence," *see Schlup v. Delo*, —— U.S. ——, —— —— ——, 115 S.Ct. 851, 861–69, 130 L.Ed.2d 808

Ineffectiveness of appellate counsel may serve as "cause." *Id.* However, in the district court, Charron's ineffectiveness claims appeared to be confined to state postconviction counsel. This would preclude us from ruling in his favor for two reasons: (1) because there is no entitlement to the effective assistance of state postconviction counsel, any ineffectiveness of that counsel may not serve as "cause", *id.;* and (2) his claim that his direct appeal counsel was ineffective is being raised for the first time on appeal, and we do not ordinarily consider such claims, *Whitmill v. Armontrout,* 42 F.3d 1154, 1156 (8th Cir.1994), *cert. denied,* — U.S. —, 116 S.Ct. 249, — L.Ed.2d — (1995).

■ Further, although the "cause" element may be satisfied due to ineffectiveness of direct appeal counsel, *Coleman* makes clear that this will be found only where counsel was ineffective within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Coleman,* 501 U.S. at 752, 111 S.Ct. at 2566. Our independent review discloses that direct appeal counsel was not ineffective under *Strickland* for failing to raise every conceivable issue on direct appeal. *See Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail ... is the hallmark of effective appellate advocacy") (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)).

■ Moreover, even assuming that Charron's appellate counsel was ineffective, "cause" has still not been established because the "ineffectiveness of appellate counsel may not be asserted as cause to excuse procedural default unless the petitioner has first presented this argument 'as an independent Sixth Amendment claim to the state courts, if a forum existed to make the argument.'" *Whitmill,* 42 F.3d at 1157 (quoting *McKinnon v. Lockhart,* 921 F.2d 830, 832 (8th Cir. 1990), *cert. denied,* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991)). Under Missouri law, the appropriate avenue for challenging the ineffectiveness of direct appeal counsel is a motion to recall the mandate. *Nave v. Delo,* 62 F.3d 1024, 1031 (8th Cir. 1995); *Jolly,* 28 F.3d at 53. Because Charron has not filed a motion to recall the mandate challenging the ineffectiveness of direct appeal counsel (or for that matter, has not raised the claim in any state pleading or proceeding), such a claim may not serve as "cause" to overcome the procedural default.

■ Along the same lines, we observe that "cause" may include "interference by officials that makes compliance with the State's procedural rule impracticable...." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470 (internal quotations omitted). Charron attempts to bring the Missouri Court of Appeals' denial of his motion for an extension of time to file a supplemental brief in his direct appeal within the rubric of this rule. We are not persuaded. We do not believe that Court's refusal to grant Charron's motion to permit him to file an untimely brief raising a myriad of additional issues satisfies this standard. Charron does not argue that state officials frustrated his attempts to raise these issues in his initial direct appeal brief, and thus we believe that compliance with Missouri's procedural rule was not impracticable.

■ Finally, in the district court Charron failed to even assert prejudice to overcome the state procedural default, and here he merely makes the broad assertion that his counsel's ineffectiveness sufficiently prejudiced him to overcome the default. "To demonstrate prejudice, a petitioner must show that the errors of which he complains 'worked to his *actual* and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions.'" *Jennings v. Purkett,* 7 F.3d 779, 782 (8th Cir. 1993) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)) (alteration in original). We recently observed that this standard of "prejudice" is higher than that required to establish ineffective assistance of counsel under *Strickland. Zinzer v. Iowa,* 60 F.3d 1296, 1299 n. 7 (8th Cir.1995). After carefully reviewing the record, we are satisfied that

(1995), in his first habeas petition, and we therefore do not consider such a claim.

Charron has not satisfied either standard of prejudice. Thus, the district court properly concluded that Charron did not establish cause and prejudice sufficient to overcome his state procedural defaults.[7]

## B. Charron's Second Habeas Petition

After the district court dismissed Charron's first habeas petition, he filed this second federal habeas petition. In this petition and accompanying motions, Charron requested the court to grant an order permitting DNA testing on evidence within the State's possession, along with an additional order requiring the State to preserve evidence within its possession. The magistrate judge concluded that this petition was abusive, Charron did not satisfy the cause and prejudice or actual innocence tests, and recommended dismissal with prejudice. The district court adopted this conclusion.

■■■■ "The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." *McCleskey,* 499 U.S. at 470, 111 S.Ct. at 1457. In *McCleskey,* the Supreme Court held that the cause and prejudice standard applicable to state procedural defaults applies to abuse of the writ cases as well. *Id.* at 493, 111 S.Ct. at 1469. Stated otherwise, a habeas petitioner who presents claims in a second or subsequent habeas petition which were not raised in the first habeas petition must show cause for the failure and prejudice arising therefrom. *Id.; see also Washington v. Delo,* 51 F.3d 756, 760 (8th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 205, — L.Ed.2d —— (1995).

■■■■ In this case, Charron's DNA claims were not included in his first petition and are abusive under *McCleskey.* Charron contends that the magistrate judge erred in concluding that his petition was abusive due to the fact that his first federal habeas petition was denied on the basis of procedural default and not on the merits. He argues

that based on *Hill v. Lockhart,* 877 F.2d 698 (8th Cir.1989), *aff'd Hill v. Lockhart,* 894 F.2d 1009 (8th Cir.) (en banc, reinstating panel opinion), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990), the merits of an abusive petition may be considered when the first habeas petition was denied on procedural grounds. However, in *Hill* we merely held that, given the history and background of the case, the district court did not abuse its discretion in considering the merits of Hill's second habeas petition, 877 F.2d at 702; we did not hold, as Charron seems to argue, that district courts are compelled to consider the merits of second or subsequent petitions. In fact, adopting Charron's argument would fly in the face of *McCleskey,* wherein the Court held that in order for a federal court to address the merits of an abusive habeas petition, the petitioner must meet either the stringent cause and prejudice or actual innocence tests. *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470. Charron also argues that "cause" may be supplied due to the fact that the first petition was drafted *pro se.* However, we have squarely rejected this argument in the context of state procedural defaults, *Stanley v. Lockhart,* 941 F.2d 707, 710 (8th Cir.1991), and conclude that the same rule applies to abuse of the writ cases as well.

■■■■ Charron also contends that he established "cause" due to ineffective assistance of counsel. The counsel to whom Charron refers is his trial counsel; however, it would not be trial counsel's ineffectiveness that would supply "cause," but the ineffectiveness of any counsel who assisted Charron in his first habeas petition. Because Charron had no habeas counsel in the district court, there can be no cause attributed. In any event, there is no right to counsel in a habeas proceeding, *McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470, and thus there can be no right to effective counsel in federal habeas corpus proceedings.

■■■■ Charron further asserts that "cause" is established because at the time he filed his first federal habeas petition he was

7. We have carefully reviewed Charron's *pro se* supplemental reply brief and conclude that the

claims contained therein are without merit.

not aware of the existence of DNA technology. "The petitioner can show cause where the factual ... basis for a claim was not reasonably available to him and he was not on notice of the claim's availability." *Jennings*, 7 F.3d at 782 (internal quotations and citations omitted). It is clear from this language that the standard is one of reasonableness, i.e., whether a reasonable habeas petitioner, using due diligence, would have been aware of the existence of this type of evidence at the time the first habeas petition was filed. The magistrate judge traced the history of DNA technology, observing that it arose in Great Britain in 1985 and by December 1, 1986, such evidence had been used in over two hundred cases in the United States. (Appellant's Addend. at 3.) From this, the magistrate judge concluded that such evidence was available long before Charron filed his first habeas petition in 1990.[8] We agree. In addition to the numerous treatises cited by the magistrate judge in her thorough report and recommendation outlining the use and availability of DNA evidence as of late 1986, our independent research reveals a number of reported appellate cases discussing DNA evidence that were decided prior to the time Charron filed his first habeas petition on November 21, 1990. *See, e.g., White v. State*, 301 Ark. 74, 781 S.W.2d 478 (1989); *Spencer v. Commonwealth*, 238 Va. 563, 385 S.E.2d 850 (1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1171, 107 L.Ed.2d 1073 (1990); *Martinez v. State*, 549 So.2d 694 (Fla.Dist.Ct. App.1989). Because Charron has failed to establish "cause," we decline to conduct a prejudice inquiry.[9]

Charron finally complains that the district court erred by refusing to permit him to conduct discovery to show "manifest injustice." Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts states that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." After carefully reviewing the record, we conclude that Charron has not offered "good cause" to conduct discovery and accordingly, the district court did not abuse its ample discretion in denying Charron the opportunity to do so.

We have examined Charron's remaining arguments and sub-arguments and conclude that they are without merit.

### III.

For the reasons enumerated above, we affirm the judgments of the district court.

---

8. In his second habeas petition, Charron himself correctly stated that DNA evidence had been used in a hearing in the United States in *People v. Wesley*, 140 Misc.2d 306, 533 N.Y.S.2d 643 (1988). This case, of course, was decided a full two years before Charron filed his first habeas petition.

9. Although he does not do so explicitly, Charron seems at several points to make a claim for "actual innocence" sufficient to overcome the abuse of the writ. *See Schlup*, — U.S. at —–—, 115 S.Ct. at 861–69; *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992); *McCleskey*, 499 U.S. at 494, 111 S.Ct. at 1470. To the extent that Charron does make such an argument, we reject it because Charron has not offered sufficient evidence to meet this standard. *See Schlup*, — U.S. at —–, 115 S.Ct. at 865 (in order for a claim of actual innocence "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").