_____

No. 94-2976WM
_____

Richard S. Zeitvogel,                    *
                                         *
                Appellant,               *
                                         *   Appeal from the United States
        v.                               *   District Court for the Western
                                         *   District of Missouri.
Paul Delo,                               *
                                         *
                Appellee.                *

_____

Submitted:  April 10, 1995

Filed:  February 28, 1996
_____

Before FAGG, HENLEY, and BOWMAN, Circuit Judges.
_____

FAGG, Circuit Judge.


        Richard S. Zeitvogel is on death row in Missouri for murdering
Gary Wayne Dew in 1984.  Zeitvogel appeals the district court's
denial of his petition for a writ of habeas corpus under 28 U.S.C.
§ 2254 (1988), and we affirm.


        Zeitvogel killed Dew while they were cellmates in the maximum
security area of the Missouri State Penitentiary.  A prison guard
responding to a flashing emergency light over their cell found Dew
dead on a mattress on the floor, and Zeitvogel alone with the body
in the locked cell.  Zeitvogel told the guard, "I killed my
cellie."  During Zeitvogel's trial for murdering Dew, the State of
Missouri presented evidence that Zeitvogel strangled Dew from
behind with a plastic-covered wire, then waited about three hours
before activating the emergency light to summon help.  Zeitvogel
admitted killing Dew, but attempted to show he choked Dew with a
sheet in self-defense after Dew attacked him.  The jury rejected

Zeitvogel's self-defense theory and convicted Zeitvogel of capital murder.

At the penalty phase of the trial, the State introduced certified copies of Zeitvogel's earlier convictions for capital murder, rape, armed robbery, assault, and jail break and escape. State witnesses explained Zeitvogel had received the earlier murder and assault convictions for fatally stabbing a fellow inmate and threatening a prison guard. Zeitvogel presented no mitigating evidence at the penalty phase. His attorney made a plea for mercy and argued Dew had provoked Zeitvogel by assaulting him. After finding the presence of three aggravating circumstances, the jury returned a verdict recommending the death penalty. The district court denied Zeitvogel's posttrial motions and sentenced Zeitvogel to death.

Zeitvogel unsuccessfully challenged his conviction and sentence on direct appeal, see State v. Zeitvogel, 707 S.W.2d 365 (Mo.) (en banc), cert. denied, 479 U.S. 871 (1986), and in Missouri postconviction proceedings, see Zeitvogel v. State, 760 S.W.2d 466 (Mo. Ct. App. 1988), cert. denied, 490 U.S. 1075 (1989). Zeitvogel then filed this habeas petition in the district court, raising thirty-two grounds for relief. While Zeitvogel's federal habeas petition was pending, Zeitvogel filed a motion for state habeas relief and the Missouri Supreme Court denied the motion. See Zeitvogel v. Delo, No. 73714 (Mo. Apr. 30, 1991). Back in the federal district court, Zeitvogel moved for an evidentiary hearing and for the appointment of experts to help him present his claims. Concluding as a matter of law that all Zeitvogel's claims were either procedurally barred or meritless, the district court denied Zeitvogel's petition without holding a hearing or appointing experts. After the district court later refused to alter or amend the judgment, Zeitvogel brought this appeal.

Zeitvogel mainly contends the State's failure to disclose

-2-

certain hospital and prison records containing evidence of Zeitvogel's low intelligence, learning disabilities, and epilepsy caused by organic brain damage (collectively "mental deficiencies") violated Brady v. Maryland, 373 U.S. 83 (1963), and his trial counsel was ineffective in not obtaining and presenting evidence of these mental deficiencies during the guilt and penalty phases of his trial. Zeitvogel now wants a federal hearing to present the evidence and expert testimony about its legal significance.

Zeitvogel failed to present and preserve these contentions in state court. Zeitvogel failed to raise his Brady claim and his guilt-phase ineffective assistance claim in state court proceedings as Missouri law requires. See LaRette v. Delo, 44 F.3d 681, 687 (8th Cir.), cert. denied, 116 S. Ct. 246 (1995). Although Zeitvogel raised his penalty-phase ineffective assistance claim and presented some supporting evidence in the state postconviction hearing, Zeitvogel failed to present the additional supporting evidence that he now wants us to consider. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 8-12 (1992) (petitioner must fully develop the supporting facts during the state court hearing); Battle v. Delo, 64 F.3d 347, 354 (8th Cir. 1995) (same). Because Zeitvogel failed to present his claims and additional supporting evidence in state court, we may not consider them in this federal habeas proceeding unless Zeitvogel shows both cause for his failure and resulting prejudice, or that a fundamental miscarriage of justice would otherwise result because he is actually innocent of capital murder or the death penalty. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Keeney, 504 U.S. at 11; Joubert v. Hopkins, No. 94-3687, 1996 WL 26673, at *7 (8th Cir. Jan. 25, 1996); Nave v. Delo, 62 F.3d 1024, 1032 (8th Cir. 1995).

We need not address the miscarriage of justice exception in this case because Zeitvogel did not assert actual innocence in his habeas petition, see Charron v. Gammon, 69 F.3d 851, 857 n.6 (8th Cir. 1995), and did not develop an actual innocence argument in his

-3-

appellate brief, see Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994). Instead, Zeitvogel relies on the cause and prejudice exception to excuse his procedural default. The district court held this exception does not apply because Zeitvogel cannot show prejudice. In our view, Zeitvogel cannot show cause for his state court default; thus, we need not decide whether Zeitvogel suffered actual prejudice. Oxford v. Delo, 59 F.3d 741, 748 (8th Cir. 1995); see also Auman v. United States, 67 F.3d 157, 161-62 (8th Cir. 1995) (Court of Appeals can affirm on any ground supported by record).

To establish cause, Zeitvogel must show something beyond the control of postconviction counsel, like State interference, actually prevented postconviction counsel from raising the claims and presenting the evidence in state court. Coleman, 501 U.S. at 753. Zeitvogel argues the State's failure to produce the hospital and prison records requested by Zeitvogel's trial attorney prevented his postconviction attorney from obtaining a sufficient factual basis to raise the defaulted Brady and guilt-phase ineffective assistance claims, and from presenting the additional evidence supporting the penalty-phase ineffective assistance claim. The unproduced records are Fulton State Hospital psychiatric reports about Zeitvogel from 1975, Missouri State Penitentiary Hospital records discussing Zeitvogel's 1984 hospital stay, and a 1983 Missouri Department of Corrections re-classification analysis. Zeitvogel suggests postconviction counsel could not know the State failed to produce these documents because the documents were not uncovered until after the postconviction proceedings were finished, and postconviction counsel needed the documents to learn of Zeitvogel's mental deficiencies and to show that trial counsel should have presented evidence at the guilt and penalty phases based on the deficiencies.

The State's failure to produce the records does not excuse Zeitvogel's procedural default. Lack of production by state

-4-

officials is not cause excusing procedural default if the information the officials failed to produce is reasonably available through other means. Barnes v. Thompson, 58 F.3d 971, 975 (4th Cir.), cert. denied, 116 S. Ct. 435 (1995). When a petitioner can obtain the information contained in unproduced documents through a reasonable and diligent investigation, the State's failure to produce documents is not cause. Id.; see McCleskey v. Zant, 499 U.S. 467, 497-98 (1991). Here, postconviction counsel knew the records existed and the information contained in them was either known or reasonably available through means other than State production.

Postconviction counsel knew the State had hospital and prison records about Zeitvogel. A psychiatrist who examined Zeitvogel before the postconviction hearing, Dr. A.E. Daniel, told postconviction counsel that Fulton State Hospital and the Missouri State Penitentiary Hospital had medical records about Zeitvogel from the 1970s and 1980s, and counsel acknowledges in his affidavit that he believed the state hospitals had all Zeitvogel's psychiatric records. The re-classification analysis is just a standard prison record from Zeitvogel's prison file, and it is common knowledge that prisons routinely keep records about inmates. Shaw v. Delo, 971 F.2d 181, 184 (8th Cir. 1992), cert. denied, 113 S. Ct. 1301 (1993). Postconviction counsel also knew much of the information about Zeitvogel's mental deficiencies and general history contained in the unproduced records because Zeitvogel's mother told postconviction counsel about Zeitvogel's epilepsy, brain damage, and learning disabilities before the postconviction hearing. See Barnes, 58 F.3d at 975.

Postconviction counsel could have obtained the state hospital and prison records if he had acted reasonably and diligently, but he made no effort to obtain them. Rather than requesting the records from the hospitals or Zeitvogel's prison file, postconviction counsel sent the Missouri Department of Corrections

a vague letter asking for "the psychiatric report from [Zeitvogel's] evaluation at the Missouri State Penitentiary." In response to counsel's letter, the State sent counsel one document, an updated psychiatric evaluation of Zeitvogel, conducted to give a current assessment of Zeitvogel's condition. Postconviction counsel should have immediately realized the updated evaluation was not one of the state hospital records Dr. Daniel had mentioned, because it was dated after counsel's letter requesting Zeitvogel's records. Further, the updated evaluation confirmed counsel's belief that the State had other relevant records, because the evaluation referred to reports from earlier examinations of Zeitvogel. The State did not tell counsel it had no other records on Zeitvogel, but sent the current evaluation with a cover letter stating "We hope this information will suffice." Postconviction counsel took no steps to obtain more records. Zeitvogel's appointed habeas counsel made the effort and obtained them "pretty easily" by filing a simple application for an order authorizing counsel's access to the records.

If postconviction counsel had acted reasonably and diligently, he could have raised the Brady and guilt-phase ineffective assistance claims, developed and presented the evidence contained in the unproduced records and expert testimony based on them, and called family members and others acquainted with Zeitvogel in the state postconviction hearing. In anticipation of the hearing, postconviction counsel had Zeitvogel examined by Dr. Daniel. Although Dr. Daniel decided Zeitvogel did not have any mental impairment affecting his criminal behavior, Dr. Daniel's opinion letter also stated Zeitvogel's history suggested epilepsy and if counsel could confirm Zeitvogel was epileptic, a neurological examination might be helpful. Postconviction counsel knew from Zeitvogel's mother that Zeitvogel had epilepsy, but did not consult a neurologist. Postconviction counsel could have obtained the unproduced records mentioned by Dr. Daniel several months before the postconviction hearing and asked the doctor to re-evaluate

Zeitvogel, or could have developed other expert testimony about the significance of the evidence in the records. Instead, postconviction counsel told the court Dr. Daniel's opinion was not helpful because the doctor said Zeitvogel's epilepsy had no effect on Zeitvogel's criminal conduct. Rather than presenting expert testimony about Zeitvogel's mental health, the postconviction attorney agreed with the State prosecutor's assessment that Zeitvogel had no psychiatric defects at the time of trial.

In our view, the blame for Zeitvogel's procedural default falls squarely on Zeitvogel's postconviction counsel rather than the State. At the time of the postconviction hearing, postconviction counsel either had or reasonably could have had a sufficient factual basis to assert the defaulted Brady and guilt-phase ineffective assistance claims, and could have presented the additional evidence supporting the penalty-phase ineffective assistance claim. See McCleskey, 499 U.S. at 498; Barnes, 58 F.3d at 975. Postconviction counsel knew about the records the State failed to produce, knew much of information they contained, and could have obtained the records if had he acted reasonably and diligently. Had counsel obtained the records, he could have developed any necessary expert testimony at the postconviction hearing. Indeed, in their habeas pleadings, Zeitvogel's habeas counsel recognize postconviction counsel knew of Zeitvogel's mental deficiencies but failed to investigate and present them at the postconviction hearing. It is well-established that the ineffectiveness of state postconviction counsel cannot excuse procedural default. Sidebottom v. Delo, 46 F.3d 744, 751 (8th Cir.), cert. denied, 116 S. Ct. 144 (1995). Postconviction counsel himself admits that after he interviewed Zeitvogel and Zeitvogel's mother, he realized "a reasonably competent [trial] defense . . . would [have] involve[d] investigation of [Zeitvogel's epilepsy and related deficiencies]." Nevertheless, postconviction counsel did not raise or fully develop the supporting facts for the now-defaulted ineffective assistance claims based on trial counsel's

-7-

failures during the guilt and penalty phases.  We thus conclude the State's failure to produce the hospital and prison records is not cause for Zeitvogel's procedural default.

Besides the State's failure to produce records, Zeitvogel contends the State's issuance of execution warrants during his postconviction proceedings is cause for his default. Postconviction counsel obtained several stays of execution for Zeitvogel.  Each time the Missouri Supreme Court granted a stay, the court postponed Zeitvogel's execution for about thirty days and issued a new warrant for his execution, as the court commonly does in death penalty cases.  Issuance of the warrants furthered the court's legitimate interest in ensuring Zeitvogel's postconviction proceeding was moving forward and was not being used solely as a delay tactic.  Nevertheless, Zeitvogel contends the warrants interfered with his ability to investigate and present claims at the postconviction hearing, because postconviction counsel was forced to spend a great deal of his time on obtaining stays. Zeitvogel has failed to show the warrants prevented him from raising and presenting any claim in the postconviction proceedings, however.  LaRette, 44 F.3d at 687.

The record does not support Zeitvogel's assertion that his postconviction counsel was too busy handling execution warrants to discover and raise the defaulted claims or develop the additional evidence.  It is relatively easy to move for a stay in Missouri. Zeitvogel's postconviction counsel merely had to obtain a certificate from the postconviction court stating additional time was needed to prepare the case, and then present the certificate to the Missouri Supreme Court, which routinely granted Zeitvogel's motions for stays.  In his brief, Zeitvogel describes two occasions when his counsel had difficulty tracking down a judge to sign the necessary certificate, but the record shows counsel brought the close calls on himself by dashing to the courthouse at the last minute.  Postconviction counsel states in his affidavit, without

providing any specifics, that his heavy workload made moving for stays especially burdensome. Even if postconviction had limited time to spend on Zeitvogel's case, Zeitvogel's mother, Dr. Daniel, and the State gave postconviction counsel ample information about potential claims and available evidence, but postconviction counsel failed to follow through on the information handed to him on a silver platter.

Zeitvogel's efforts to blame his procedural default on the State fail as a matter of law. Thus, the district court properly refused to conduct an evidentiary hearing on the issue of cause, Oxford, 59 F.3d at 748, and on Zeitvogel's defaulted Brady claim and his defaulted guilt-phase ineffective assistance claim, Pollard v. Delo, 28 F.3d 887, 888-89 (8th Cir.), cert. denied, 115 S. Ct. 518 (1994). For the same reason, Zeitvogel is not entitled to a federal hearing to supplement the postconviction court's record on his penalty-phase ineffective assistance claim. Battle, 64 F.3d at 354-55; Sidebottom, 46 F.3d at 750-51. Given that the district court properly refused to conduct an evidentiary hearing, we reject Zeitvogel's contention that the district court should have appointed experts and investigators to help Zeitvogel present his claims.

Having disposed of the main thrust of Zeitvogel's appeal, we turn to his remaining contentions. At trial, Zeitvogel's counsel presented the testimony of inmates Chester Bettis and Charles Stevenson to support Zeitvogel's claim that he killed Dew in self-defense. Bettis and Stevenson testified Dew and Zeitvogel were fighting in their cell on the day of Dew's murder and Dew threatened to kill Zeitvogel. Zeitvogel now argues his trial counsel was ineffective for not calling several additional inmates to testify in support of Zeitvogel's self-defense claim. Zeitvogel raised this ineffective assistance claim during his state postconviction proceedings, but postconviction counsel did not call the additional inmates as witnesses.

To show counsel was ineffective, Zeitvogel must show his attorney's actions prejudiced him, that is, a reasonable probability that the jury would have reached a different verdict had it heard the additional testimony. Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994), cert. denied, 115 S. Ct. 1719 (1995). We have reviewed the trial attorney's testimony at the postconviction hearing and agree with the postconviction court that the additional inmates could have done little more than rehash the testimony given by Bettis and Stevenson. See Zietvogel, 766 S.W.2d at 468, 470. Zeitvogel argues the inmates who did not testify could have strengthened his self-defense claim by testifying Dew had a motive to attack Zeitvogel: Dew believed Zeitvogel had informed prison authorities about Dew's attack on another inmate in the prison chapel, and Dew wanted to get back at Zeitvogel for snitching on him. We will not consider this factual argument, however, because it was not presented to the state court. Flieger v. Delo, 16 F.3d 878, 884-85 (8th Cir.), cert. denied, 115 S. Ct. 355 (1994). During the postconviction hearing, Zeitvogel's postconviction counsel did not present any evidence about Dew's motive to attack Zeitvogel, the chapel incident, or any testimony from the inmates about revenge. Indeed, the prisoners' affidavits discussing Dew's motive are dated nearly seven years after the state postconviction hearing. We conclude Zeitvogel has not shown his trial counsel's failure to call the additional witnesses prejudiced him. See Strickland v. Washington, 466 U.S. 668, 694 (1984); Foster, 39 F.3d at 877.

Zeitvogel next contends the trial court violated due process by requiring Zeitvogel to remain shackled while in the courtroom. Although Zeitvogel has complained of the shackling in other ways, Zeitvogel did not raise this due process argument in the state or district court, so we need not consider it. Jones v. Caspari, 975 F.2d 460, 461 (8th Cir.), cert. denied, 113 S. Ct. 345-46 (1992). The argument is meritless, anyway. The trial court acted well within its discretion in deciding restraints were necessary to

-10-

prevent Zeitvogel from escaping and to protect others in the courtroom. At the time of trial, Zeitvogel had murder, rape, and assault convictions and had escaped from state custody once before. See Gilmore v. Armontrout, 861 F.2d 1061, 1071 (8th Cir. 1988), cert. denied, 490 U.S. 1114 (1989). Further, the trial court's decision to require restraints did not prejudice Zeitvogel. Even without seeing the shackles, the jury would have learned from the trial evidence that Zeitvogel was an inmate. See Estelle v. Williams, 425 U.S. 501, 507 (1976). After all, Zeitvogel killed Dew in the maximum security area of the Missouri State Penitentiary. Because the trial court's ruling requiring restraints was clearly proper, we reject Zeitvogel's contention that trial counsel was ineffective for not objecting to the ruling. This ineffective assistance claim is procedurally barred as well because Zeitvogel abandoned the claim during his state court appeal from the denial of postconviction relief. Nave, 62 F.3d at 1030.

Zeitvogel next challenges the penalty-phase jury instructions. Jury instruction eighteen stated Zeitvogel would not be eligible for the death penalty unless the jury found the existence of at least one of three aggravating circumstances, including that Zeitvogel had a substantial history of serious assaultive convictions, and that at the time of Dew's murder, Zeitvogel had an earlier capital murder conviction. Zeitvogel contends this instruction improperly listed these two separate aggravating circumstances when only one was authorized by the controlling Missouri statute, Mo. Rev. Stat. § 565.012.2 (Supp. 1983). See Zeitvogel, 707 S.W.2d at 368. During Zeitvogel's direct appeal, however, the Missouri Supreme Court held all the aggravating circumstances were properly given under Missouri law. Id. We defer to the Missouri Supreme Court's interpretation of its state law. Baker v. Leapley, 965 F.2d 657, 659 (8th Cir. 1992).

Instructions eighteen and nineteen both mention Zeitvogel's earlier murder conviction, and Zeitvogel argues this "duplication"

violates the Eighth Amendment. We disagree. Instruction eighteen narrowed the class of capital murderers eligible for the death penalty. See Zant v. Stephens, 462 U.S. 862, 878 (1983). Instruction nineteen instructed the jury to consider all the evidence in deciding whether Zeitvogel should actually receive the death penalty. The jury was entitled to consider Zeitvogel's criminal record in making its sentencing determination. Id. at 888.

Because instructions eighteen and nineteen were proper, Zeitvogel's trial counsel was not ineffective for failing to object to them. Further, Zeitvogel never raised this ineffective assistance issue in the Missouri courts. Habeas relief is not warranted in any event because the alleged error did not infect the entire trial and render it fundamentally unfair, nor was the alleged error a fundamental defect resulting in a complete miscarriage of justice. Baker, 965 F.2d at 659; Kennedy v. Delo, 959 F.2d 112, 118 (8th Cir.), cert. denied, 113 S. Ct. 168 (1992).

Finally, Zeitvogel contends the Missouri Supreme Court did not adequately review his sentence to ensure its proportionality to sentences imposed on defendants in similar cases, in violation of the Eighth and Fourteenth Amendments. The Missouri Supreme Court reviewed Zeitvogel's sentence during his direct appeal, however, and addressed and decided the proportionality issue in its opinion. Zeitvogel, 707 S.W.2d at 370-71. Under our recent decisions, this is the end of our inquiry. See LaRette, 44 F.3d at 688; Foster, 39 F.3d at 882; Murray v. Delo, 34 F.3d 1367, 1376-77 (8th Cir. 1994), cert. denied, 115 S. Ct. 2567 (1995).

In conclusion, Zeitvogel's contentions fail. Because Zeitvogel cannot show cause for his procedural default, Zeitvogel is not entitled to a federal evidentiary hearing on his main claims. Zeitvogel's remaining contentions are procedurally barred or meritless. We thus affirm the district court's denial of

-12-

Zeitvogel's habeas petition.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.